IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 3:09-CR-318-D(02) |
| VS. | § | |
| | § | |
| GOMESINDO MENDEZ, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION</u>

At the sentencing of defendant Gomesindo Mendez ("Mendez"), his counsel advised the court that Mendez had instructed him to inform the court that Mendez desired to withdraw his guilty plea. The court denied the motion and proceeded with the sentencing. The court now files this memorandum opinion explaining its reasons for declining to permit Mendez to withdraw his guilty plea.[1]

I

Following his arrest on October 9, 2009 in response to a complaint, Mendez was indicted on November 3, 2009 on one count of conspiracy to possess with intent to distribute five or more grams of methamphetamine, in violation of 21 U.S.C. § 846. Mendez retained Dianne Kathryn Jones McVay, Esquire ("Jones") and Shaun

_____

[1]Because Mendez waited until the sentencing hearing commenced to move to withdraw his plea, the court was unable to file a memorandum opinion before the sentencing hearing. Although this memorandum opinion refers to assertions made by Mendez in a *pro se* pleading filed after the sentencing hearing, the court is addressing these allegations on the assumption that Mendez would have relied on them had the court convened a hearing. The court therefore deems it appropriate to explain why these reasons would not have resulted in allowing Mendez to withdraw his guilty plea.

Carson Naidoo, Esquire ("Naidoo") as his attorneys.  Mendez pleaded
not guilty on December 11, 2009, and the court set the case for
trial on January 11, 2010.  He filed a December 18, 2009 motion for
continuance, and the court continued the trial until March 8, 2010.
On January 27, 2010 Mendez filed a *pro se* petition for a writ of
mandamus to dismiss the indictment.[2]  In his petition, he requested
certain relief from the court, and he specifically complained about
the  plea  agreement  that  Jones  had  presented  to  him  for
consideration.

On February 5, 2010 Mendez filed pretrial motions through his
attorneys,  and  on  February  11,  2010  Jones  and  Naidoo  moved  to
withdraw.  After  Jones  and  Naidoo  filed  their  motion,  Mendez
retained  Hilda  Morales  Hahn,  Esquire  ("Hahn")  as  his  attorney.
Hahn filed a motion to substitute on February 22, 2010.  The court
granted the motion of Jones and Naidoo and the motion of Hahn the
next day.

A  few  days  later,  on  March  1,  2010,  a  plea  agreement  and
factual  resume  were  filed  with  the  court,  indicating  that  Mendez
intended to plead guilty.  The court set a hearing for May 7, 2010

---

[2]The  petition  was  similar  to  petitions  filed  by  other
defendants—some  proceeding  *pro  se*—being  detained  at  the  same
facility.  Their  apparent  cooperation  extended  to  other  filings.
On April 14, 2010 Mendez joined two *pro se* defendants from other
cases in filing in this case a so-called "JUDICIAL NOTICE OF PUBLIC
MINISTERS," in  which  they  essentially  asserted  that  they  are
public ministers who are not subject to being held by the United
States of America.

to take his guilty plea.  The court later changed the date twice, setting the plea hearing for June 11, 2010.

On June 10, 2010, however, Mendez moved to withdraw the plea agreement and the factual resume, stating that he wished to proceed to trial.  The court granted the motion on June 11, 2010.  On June 14, 2010 it decided the pretrial motions that Mendez had filed in February 2010.  His trial was set for June 28, 2010.

The court held a pretrial conference on Friday, June 25, 2010. On Monday, June 28, 2010, the day the trial was to commence, Mendez advised the court that he now desired to plead guilty rather than proceed to trial.  Early in the Fed. R. Crim. P. 11 proceeding, the court specifically admonished Mendez concerning the matter of withdrawing his plea.  The court was aware that Mendez had already changed his mind twice concerning his intended plea, that the parties were apparently ready for trial, that the court was ready for trial, and that prospective jurors were standing by for jury selection.  The court stated:

> THE COURT:  I also want to discuss with you the matter of withdrawing your guilty plea.
>     Do you understand that if you plead guilty and we do not go to trial today and you later seek to withdraw your plea of guilty, *you will have a very difficult time having that motion granted*, because we are ready to start the trial today?
>
> THE DEFENDANT: Yes.
>
> THE COURT:  So that *if you do not truly want to plead guilty this morning* you need to let us know that and we will start the trial.

THE DEFENDANT: Yes.

Tr. 9 (emphasis added).[3]    After accepting his guilty plea, the court scheduled the sentencing hearing for October 1, 2010.

     Several weeks later, on August 18, 2010, Mendez filed a *pro se* affidavit of ineffective assistance of counsel in which he complained about Hahn's ineffectiveness, asserted that he was innocent, and alleged that he had been forced to plead guilty due to Hahn's ineffectiveness.

     On September 17, 2010 the court reset Mendez's sentencing hearing to October 29, 2010.  On September 21, 2010 Hahn moved to withdraw as Mendez's attorney.  On September 30, 2010 her motion was granted, and Anthony H. Green, Esquire ("Green") was appointed to represent Mendez on October 12, 2010.

     At Mendez's October 29, 2010 sentencing hearing, Green informed the court that Mendez had instructed him to move to withdraw his guilty plea, and he requested a hearing on the motion.[4]  The court denied the request for a hearing and denied the motion, and it sentenced Mendez to 262 months' imprisonment and four years of supervised release.

     The court now explains its reasons for denying the motion.

_____

          [3]This is taken from an unofficial draft of a transcript and is subject to revision by the court reporter at the time the official version is filed.

          [4]Green did not move prior to the sentencing hearing to continue the sentencing.

Rule 11(d)(2)(B) provides that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."

> A defendant does not have an absolute right to withdraw his guilty plea. When requesting withdrawal before sentencing, the defendant must show a fair and just reason for the request. When determining whether a fair and just reason has been shown, a court considers the factors set forth in *United States v. Carr*. The factors include whether (1) the defendant has asserted his innocence, (2) the government would be prejudiced, (3) the defendant delayed in requesting the withdrawal, (4) the court would be substantially inconvenienced, (5) the close assistance of counsel was available, (6) the plea was knowing and voluntary, (7) the withdrawal would waste judicial resources, and as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion.

*United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007) (quoting *United States v. Powell,* 354 F.3d 362, 370 (5th Cir. 2003), Rule 11(d)(2)(B), and *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984)) (footnotes, brackets, and quotation marks omitted). "A mere change of mind is insufficient to permit the withdrawal of a guilty plea before sentencing." *Id.* at 316-17 (quoting *United States v. Glinsey*, 209 F.3d 386, 397 (5th Cir. 2000) (brackets, internal quotation marks, and ellipsis omitted).

"Withdrawal is permitted for pleas unknowingly made; the purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id.* at 317 (quoting *Carr*, 740 F.2d at 345) (brackets and internal quotation marks omitted).

"The defendant bears the burden of establishing a fair and just reason for withdrawing his plea." *Powell,* 354 F.3d at 370 (citing *United States v. Brewster*, 137 F.3d 853, 858 (5th Cir. 1998)). "The district court's decision to permit or deny the motion is based on the totality of the circumstances." *Id.* (citing *Brewster*, 137 F.3d at 858). "[T]he district court is not required to make findings as to each of the *Carr* factors." *Id.* (citing *Brewster*, 137 F.3d at 858).

A defendant is "not entitled to an evidentiary hearing, [although] a hearing is required 'when the defendant alleges sufficient facts which, if proven, would justify relief.'" *Id.* (quoting *United States v. Mergist,* 738 F.2d 645, 648 (5th Cir. 1984)). "[A] district court's decision not to hold an evidentiary hearing is reviewed for abuse of discretion." *Id.* (citing *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983)). In *Powell* the circuit court found no such abuse of discretion where the defendant alleged numerous reasons for allowing her guilty plea to be withdrawn but, even if they were all true, under the totality of

the *Carr* factors, they clearly did not tip in her favor, and there was no indication that the district court made any clear errors in assessing the evidence pertaining to the defendant's plea. *Id.* at 371. The Fifth Circuit has also upheld the denial of an evidentiary hearing where the defendant "did not assert his innocence, delayed several weeks before seeking to withdraw his plea, and entered his plea with the assistance of counsel." *Washington*, 480 F.3d at 317.

At the commencement of the sentencing hearing, Mendez's attorney advised the court that Mendez had instructed him to move to withdraw his guilty plea. Mendez asked for a hearing on his motion. The court denied the request given the eleventh-hour nature of the request and the fact (which the court noted in denying the request) that the court had explicitly admonished Mendez at the time he pleaded guilty that his trial was about to start and that it would therefore be very difficult to seek to withdraw his plea later. Consistent with Mendez's filings, the court will assume that, had it convened a hearing, Mendez would have asserted his innocence and would have alleged that he pleaded guilty because Hahn forced him to plead guilty, she threatened to abandon him if he did not plead guilty, she advised him that she would provide ineffective assistance of counsel at trial unless she received extra payment, and she was completely ineffective at the pretrial conference. The court now explains its reasons for

- 7 -

declining to permit Mendez to withdraw his plea despite these assertions.

III

A

The first *Carr* factor inquires whether Mendez has asserted his innocence.  Although he signed a plea agreement and factual resume that were filed on March 1, 2010, and he pleaded guilty on June 28, 2010, Mendez has asserted that he is not guilty.  This *Carr* factor weighs in Mendez's favor.

B

The second *Carr* factor is whether the government would be prejudiced if the motion were granted.  This factor intertwines with the fourth factor——whether the court would be substantially inconvenienced——and the seventh factor——whether the withdrawal would waste judicial resources.

After Mendez decided to proceed to trial, the court ruled on his pretrial motions filed through counsel, conducted a pretrial conference, prepared for trial (including drafting a proposed jury charge), and summoned jurors who were present at the courthouse and ready for empanelment.  The government prepared for trial as well. The court and the government were ready to begin trial as scheduled on June 28, 2010.  After Mendez pleaded guilty, the probation office prepared the presentence report and an addendum.  The court and the government prepared for the sentencing hearing.

Allowing Mendez to withdraw his guilty plea at sentencing and proceed to trial would prejudice the government, substantially inconvenience the court, and waste judicial resources. The prosecution would be forced to prepare a second time for a trial for which it was prepared in June. The court would be required to fit the case into its trial docket (when it could already have tried the case at an available setting), prepare a second time for trial, and summon another group of prospective jurors, at additional expense and inconvenience. And all of this would occur because, despite the fact that in the early part of taking Mendez's guilty plea the court specifically ensured that Mendez understood the difficulty he would encounter in later seeking to withdraw his guilty plea, and of the fact that the trial would start if he did not truly want to plead guilty, Mendez decided to plead guilty. These *Carr* factors weigh heavily against granting Mendez's motion.

C

The third *Carr* factor——whether Mendez delayed in filing his withdrawal motion——also weighs against granting his motion. Mendez pleaded guilty on June 28, 2010. Assuming *arguendo* that Mendez's present allegations are true, he must have known on the very day he pleaded guilty that he was doing so because Hahn forced him to plead guilty; she threatened to abandon him if he did not plead guilty; she advised him that she would provide ineffective assistance of counsel at trial unless she received extra payment;

and she was completely ineffective at the pretrial conference.  Yet he waited four months——until the commencement of the October 29, 2010 sentencing hearing——to move to withdraw his guilty plea.[5]

As *Carr* teaches, "[w]ithdrawal is permitted for pleas unknowingly made; the purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Washington*, 480 F.3d at 317 (quoting *Carr*, 740 F.2d at 345) (brackets and internal quotation marks omitted).  This factor weighs against granting Mendez's motion.

### D

The fifth *Carr* factor is whether close assistance of counsel was available.  Mendez has at all times been represented by counsel in this case.[6]  In fact, he has been represented by four different attorneys, three of whom he retained.[7]  Mendez had the assistance of counsel at each stage, and he was represented by counsel during the Rule 11 plea proceeding.  This factor weighs against granting Mendez's motion.

---

[5]It is no answer to say that he could not have filed the motion until his fourth lawyer was appointed in October 2010.  Mendez has shown a willingness throughout this litigation to make *pro se* filings, particularly when they complain of his attorneys' representation of him.

[6]Mendez has made *pro se* filings, but he did so while represented by counsel.

[7]Notably, Mendez has asserted claims of ineffectiveness against at least two of the three attorneys whom he retained.

The sixth *Carr* factor is whether Mendez's guilty plea was knowing and voluntary.

Mendez complains that he pleaded guilty because he was forced to do so as a result of Hahn's ineffectiveness. In an affidavit filed after sentencing in support of a stay pending appeal, Mendez asserts that he did not agree with the tactics and strategies of counsel presented at *any* stage of the proceedings and that his signatures were procured through threat, duress, and coercion. Moreover, in his affidavit of ineffective assistance of counsel filed on August 18, 2010, Mendez asserted that Hahn forced him to plead guilty, threatened to abandon him if he did not plead guilty, refused to withdraw his guilty plea upon his request, took four months to withdraw his guilty plea, advised him that she would provide ineffective assistance of counsel at trial unless she received extra payment, and was completely ineffective at the pretrial conference. Mendez also asserted that he pleaded guilty because of Hahn's performance at the pretrial conference. Mendez's father also submitted an affidavit in which he averred that Hahn attempted to extort additional money from the Mendez family; that Hahn advised Mendez's father that she would intentionally fail to properly represent Mendez if she was not provided additional money; and that Mendez's father did not believe that Hahn effectively represented Mendez.

These assertions are refuted and belied by testimony that Mendez gave under oath at his plea hearing. "[S]olemn declarations in open court carry a strong presumption of verity." *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (addressing motion to withdraw guilty plea)). During the Rule 11 plea proceeding, the court asked Mendez about his attorney's representation and advice:

> THE COURT: . . . Mr. Mendez, are you *fully satisfied* with your attorney and the representation and advice given you in the case by your attorney?
>
> THE DEFENDANT: Yes, sir.

Tr. 4 (emphasis added).

Additionally, the court specifically asked Mendez whether he was pleading guilty voluntarily, of his own free will, because he was guilty, and he answered "Yes, sir." *Id.* at 6. The court asked if anyone had threatened or attempted to force Mendez to plead guilty, and he answered, "No, sir." *Id.* But the court did not stop there. It gave Mendez still another opportunity to reveal that he was pleading guilty (if he was) involuntarily, emphasizing "if you do not truly want to plead guilty this morning you need to let us know that." *Id.* at 9. And after considering all of Mendez's responses under oath to extensive questioning about his understanding of the nature of the charge, the rights that he was relinquishing by pleading guilty, and the consequences of his plea, the court found that his plea was made knowingly and voluntarily.

*See id.* at 16-17.

The court adheres to its finding that Mendez's guilty plea was knowing and voluntary.  This factor supports denying his motion.

F

Considering the totality of the circumstances, the court concludes that Mendez did not show a fair and just reason to withdraw his guilty plea.     November 18, 2010.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE